I have five cases on tap for oral argument this morning, and the first is Beacon-Corcoran-Jenison Partners, LLC, et al., University of Pittsburgh, et al., number 06-3803. Mr. Rath and Mr. Manion, but obviously there's... Conley. Oh, I'm sorry. I apologize. It's Conley. Good morning, Your Honors. With the permission of the Court, my name is Frank Rath. I represent Beacon-Corcoran-Jenison Partners, Beacon Residential Properties Limited Partnership, Corcoran-Jenison Company, Inc. The plaintiffs below appellant in this Court. If it pleases the Court, I wish to reserve five minutes for rebuttal. That's fine. I think the first question, before you even get anywhere near the merits, is do we have a justiciable controversy here? Except for maybe close to the last paragraph of your complaint, it appears that all of the damages that you're talking about are speculative. They could happen in the future. Can you address that? Yes, Your Honor. I can address it. It would be our position that the interference did occur, that the interference with the Residence Council did occur, and that that had damaged the relationship. We don't know if the property is going to be developed. If that doesn't occur, we lose a lot of money. So there has been... But you don't know if the property... At this point I don't, Judge. At this point... So aren't we dealing with speculation? Your Honor, there has been damage to this point in that they've incurred legal fees to get this stopped, and that there has been additional expense due to delay. No doubt there's been going to be increased construction costs. All of this process is a result of the damage of the relationship. So there has been some damage to date. The big damage hasn't occurred yet, I agree with you. But I don't think it makes it speculative, Judge. What's the status of the partnership arrangement with the Residence Council? At present, Your Honor, we believe that that status... There's been an election after this, after the complaint was filed. We think the status has been restored. I have to answer that candidly. It's not the same board that was... I'm sorry, the same Residence Council board that was the subject of this complaint. But I don't know if the property is going to be developed. The damage may have been irreparable, but we're working on that. And I will also tell you that I've handled this lawsuit. I've not been a party to the business end of it, and I'm giving you my best inference from the little I do here in that regard. But I don't, at this point, believe that we're there in terms of the development, although the panel has... the board has changed composition, and we hope that the damage has been restored. At the very least, it will sound like we should just stay our hand and see what happens. Your Honor, that, I guess, is an option in terms of seeing how the future events play out. I can't argue with that. What would happen here? What can you point to as any real and immediate damage except for your legal costs associated with fighting this? It looks like things have been patched up in the partnership. Is something happening or has it happened with the housing authority that cuts off rights that you think were vested? Can you point to anything other than incurred fees? Incurred fees was one, Your Honor. The other, I think, is increased construction costs. We would have hoped to have had this built by now. Something happening with the housing authority? I'm not sure I understand the question in that regard. Was that relationship damaged? If I understood the complaint correctly, the assertion is that this was a two-pronged attack by the university to wreck your established contractual relationship. One was to, in effect, buy off the resident council, and the second was to undermine the relationship your client had with the housing authority and persuade the housing authority to terminate the relationship they had and market the property to the university, sell the property to the university. If I misunderstood the nature of the complaint. What I'm saying is, has something actually happened since the filing of the briefs to lend creeds to or give weight or substance to the concern that the university relationship had been, I mean, the housing authority relationship has been damaged? The housing authority is actually cutting off some right that you think is a vested right in your client? Your Honor, I don't think since the filing of the briefs. I think what is in the brief, you'll see the documents in their brief, and they reference it from the housing authority. We'd like to have bids. We'd like you to take a look at it. We'd like to have an Oak Hill open house. Those things are all a matter of record. We'd like to. Right. Okay. And they did. Phase one is completed? It is, Your Honor. Phase one was completed in roughly 2008. Now, what contractual provision exists in writing that's valid that grants you a right to undertake phase two? Your Honor, there are several documents that are referred to in the complaint, and I recognize, and I think that's critical in this case, that the university's position is that the HOPE VI development grant is the only document that speaks to that issue, and I don't think it's accurate. The history, if I can answer it briefly by way of... They're saying that the HUD document grant is all that exists, and you're saying what else exists? Right, and I'm saying, Your Honor, there was a history. My client responded to a request for a proposal that went to developing the entire property, the entire 80-acre parcel. That's what we bid on. That's what HUD approved. Let me back up a step. When we responded to that, Your Honor, subsequent to that, there was an addendum to the request for proposal. A question was asked, are we talking about the 80 acres here and parts of the lower hill in Oakland? And they responded, yes. The authority said, that's what we're talking about. You may have to get into the lower hill in Oakland, but certainly it's the 80 acres, and they sent that to us, and on a going-forward basis, it was always to be a phased, one-phase, two-phase development of the entire 80-acre parcel, and I think that's even recognized, Your Honor, in Mr. Lowe, the executive director's letter of December 2000, where he indicates that that phase two property, which is Robinson Court, we're not going to do anything with that, specifically with the university, without talking to you, without having you involved in that. So, those were the things that I would point to. I think that contract grows out of there. The other thing about the HOPE VI grant, Your Honor, is that it was a piece of the financing in this case. Yes, Your Honor. I apologize. You just referenced that December 12, 2000 letter. That's the 55-56 of the appendix. Are you saying, did I understand you right to say you think that that letter gives rise to contractual rights? I'm saying that's evidence of the fact that everybody understood that that's what the contract was. There are a number of documents that letter evidences the understanding. It's evidence of intent. It's not a contractual document itself. No. It's a letter that was a question that Judge Ambrose asked. Not to my knowledge, Your Honor. What needs to be done to get to the building permit stage? I think, Your Honor, you have to get the site control from the Tenants Council. Then that gets approved by the authority, by resolution. It goes to HUD. The financing then gets in place, and then you get the permits and approvals from the city, and you're on your way. So why can't FIT just quote Yogi Berra and say it ain't over until it's over? They have a right to come in if they want to try to get that property, which would seemingly be helpful to FIT. What is to stop them from doing that? Your Honor, I think that the answer to that question is if you look at their briefs, they're very intent on saying there's only one contract. It was over. What stops them is that we had the contractual right. It was a well-pledged fact at the 12P6 stage of these proceedings to develop the entire parcel of the real estate. What did you plead in the way of wrongful conduct? I'm sorry. Well, if I understand their argument, it's that they're privileged or entitled to try to negotiate and get something done themselves, and if I understand your position, it's that they wrongfully interfered with the system in the first place. What did they do that was wrong? Your Honor, they put a lot of political pressure on the Housing Authority of the City of Pittsburgh. Why is that wrongful? Because they're asking them to induce Judge Roth a breach of a contract under the well-pledged facts of the complaint, not petitioning the government. Beyond that, Your Honor, what they went to was the Tenants Council and induced them to basically, and I reference it in the complaint, basically throw us over with promises of we'll give you a corrections team, we'll give you breach menders and jobs, we'll give you a co-op, we'll give you a dry cleaner, all of these inducements in order to get them to sever our relationship, plus they discredited us, you're an out-of-town developer, you're big money, they don't care about you, so that would be the evidence. Again, I think it is pledged in the complaint, which I believe is sufficient at this point in time, Your Honor. If you could have filed a STIR reply brief, what would you have said? I did file... Your Honor, I'm sorry, I didn't follow the question. I'm really not... Pursuing that? No, Your Honor. The more I think about it, I don't believe that it would have made a difference and therefore that means I'm not prejudiced, and so I thought you meant up here. I apologize. No, I'm not pursuing. Thank you. Thank you, Your Honor. Thank you. May it please the Court, my name is Pam Connolly, I represent the University of Pittsburgh, the defendant below, and the appellee in this matter. What is the current status of what's going on with respect to the case? Your Honor, this is outside of the record, but based on reported press articles in the local paper, the Post-Gazette, from March 2007 forward, there was a bi-tri-party agreement reached, perhaps four parties, between the City of Pittsburgh, the Housing Authority, the Residence Council, and the University of Pittsburgh to essentially divvy things up. The University agreed to pay certain millions of dollars for the land, agreed to fund programming for the Residence Council. BCJ, under this agreement, is going to be entitled to develop another portion of the property at issue, and there are other obligations back and forth in that agreement as well. So BCJ is in the mix, at least according to the press? Yes. There was an article yesterday describing this in the paper. Maybe today. Is this a pending agreement or an inked deal? There is an inked deal, which was reached in the Mayor's office, I believe, March 21st. The parties are still debating some of the related terms to that agreement. Do you think we're here too soon? I cannot see any harm in waiting to see if this is resolved. Unfortunately, it did not occur before this oral argument. Council tried to facilitate that last week, and it's a complicated agreement, and the parties are fighting over things like the placement of retaining walls and the maintenance of retaining walls. It's always nice to come to Wilmington. Maybe not such a great time to be getting into the contours of the North Pennington Dock if the contours of your retaining wall may make it irrelevant. Okay. We're back on the record, and in discussions with the parties, the court is going to hold this case CAB, that is, in advance. We're going to ask the parties to supply us by the last business day of each month, beginning the last business day of October, with a report as to their discussions as to ongoing negotiations in order that it may make this case resolved and moved. If the parties are unable to reach an agreement within a certain period of time or we don't see any hope, we will probably have the parties back for a resumed oral argument. The parties should not take from today's questions anything relating to the case, but let's allow this a chance to see if the progress that has been made so far ultimately gets us over the goal line. Thank you. Thank you. Note that I do not go along with the football metaphor, but ultimate success is desired, whatever your vocabulary. Thank you. Thank you.